UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal Action Number: *11cr 10331* |
| ) | |
| v. ) | Violations: |
| ) | 18 U.S.C. §844(f) - Attempting to |
| REZWAN FERDAUS, ) | Damage and Destroy a Federal Building |
| ) | By Means of an Explosive; |
| a/k/a "Dave Winfield" ) | 18 U.S.C. §2155 - Attempting to |
| a/k/a "Jon Ramos" ) | Damage and Destroy National-Defense |
| Defendant. ) | Premises; |
| ) | 18 U.S.C. §844(d) - Receipt of |
| ) | Explosive Materials; |
| ) | 26 U.S.C. §5861 - Receipt and |
| ) | Possession of Non-Registered |
| ) | Firearms; |
| ) | 18 U.S.C. §2339A - Attempting to |
| ) | Provide Material Support to |
| ) | Terrorists; and |
| ) | 18 U.S.C. §2339B - Attempting to |
| ) | Provide Material Support to a |
| ) | Designated Foreign Terrorist |
| ) | Organization. |

**INDICTMENT**

The Grand Jury charges that:

## INTRODUCTORY ALLEGATIONS

1.    Beginning in or about 2010 and continuing until his
arrest in September 2011, the defendant, REZWAN FERDAUS, a/k/a
"Dave Winfield," a/k/a "Jon Ramos" ("the defendant" or
"FERDAUS"), a 26 year-old United States Citizen residing in
Ashland, Massachusetts, planned to commit acts of violence
against the United States.  With the goal of terrorizing the
United States, decapitating its "military center," and killing as
many "kafirs" (an Arabic term meaning non-believers) as possible,
FERDAUS extensively planned and took substantial steps to bomb

1

the United States Pentagon and United States Capitol Building using remote controlled aircraft filled with explosives.

2.    Remote controlled aircraft, such as model airplanes and drones, are aerial vehicles that do not carry a human operator, use aerodynamic forces to provide vehicle lift, can be piloted remotely and equipped with a global positioning system ("GPS"), and are capable of carrying a lethal payload (including a large volume of explosives).  Further, remote controlled aircraft can use a wide range of take-off and landing environments, and fly different flight patterns than commercial airlines, thus reducing the risk of detection.

3.    In addition, beginning in or about January 2011, FERDAUS, a Northeastern University graduate with a Bachelor's Degree in Physics, began designing and constructing detonation components for improvised explosive devices ("IEDs") using mobile phones.  IEDs commonly consist of the following: (a) a switch/trigger; (b) an initiator; (c) a power source; and (d) explosives.  As described below, the mobile phone devices FERDAUS built and delivered to individuals whom he believed to be al Qaeda operatives constitute the electrical switch or trigger component for an IED, which is necessary to trigger an explosion.

4.    Between in or about June 2011 and continuing through September 2011, FERDAUS supplied 12 mobile phones, each of which FERDAUS had modified to act as an electrical switch for an IED,

2

to FBI undercover employees ("UCEs"), who FERDAUS believed were members of, and recruiters for, al Qaeda, purportedly to be used to kill American soldiers stationed overseas. During meetings with the UCEs, FERDAUS referred to these devices as "detonators," "detonation devices," and "phones." To build these devices, FERDAUS purchased mobile phones, unscrewed the back cover of each phone, and then soldered wires to the phone. On several occasions, FERDAUS explained to the UCEs how these devices worked: when the mobile phone's number is dialed, the phone sends an electrical current through these wires, which would act as the "electrical switch" for the detonation device.

5.    When FERDAUS delivered these detonation devices to the UCEs, he intended that they be used to kill members of the U.S. military located overseas. During a meeting with the UCEs on June 27, 2011, FERDAUS appeared gratified when the UCEs (falsely) told him that his first detonation device succeeded in killing three U.S. soldiers and injuring four or five others in Iraq and responded, "That was exactly what I wanted." After each subsequent delivery to the UCEs, FERDAUS was anxious to know how each of his detonation devices had worked and how many Americans had reportedly been killed.

6.    A technical examination of the mobile phone devices FERDAUS built and delivered to the UCEs revealed that the devices are components of a detonation device and can be used, at a

minimum, as an electrical switch or trigger for an IED.  FERDAUS'

mobile phone devices could trigger an explosion provided other

IED components (i.e., an initiator and explosives) are attached.

7.    The United States Secretary of State designated al

Qaeda as a foreign terrorist organization on October 8, 1999 and

it remains so designated to this day.

4

**COUNT ONE:**      18 U.S.C. §844(f) (Attempting to Damage and
                    Destroy a Federal Building By Means of an
                    Explosive)

The Grand Jury charges that:

The allegations contained in paragraphs 1 and 2 of the
Introductory Allegations are hereby re-alleged and incorporated
by reference as if fully set forth herein.

From in or about March 2011, and continuing through in or
about September 2011, in the District of Massachusetts and
elsewhere in the United States,

                    **REZWAN FERDAUS,**
                    **a/k/a "Dave Winfield,"**
                    **a/k/a "Jon Ramos"**

defendant herein, maliciously attempted to damage and destroy a
building, to wit: the United States Pentagon and the United
States Capitol Building, in whole and in part, owned and
possessed by the United States and a department thereof, by means
of an explosive.

During his attempt to damage and destroy the United States
Pentagon and the United States Capitol Building, defendant
FERDAUS took the following actions, among others:

(a)   On or about March 9, 2011, FERDAUS described his plan
to attack the Pentagon using a remote controlled aircraft filled
with explosives to two FBI UCEs.

(b)   On or about March 26 and 27, 2011, FERDAUS conducted
research on remote controlled aircraft in an Internet cafe in New

5

York.

(c)  On or about March 28, 2011, FERDAUS told two FBI UCEs
that he had found a website on the Internet that sells remote
controlled aircraft that can fly 100 miles per hour and carry a
payload of up to 50 pounds.  In addition, on this same date,
FERDAUS told the UCEs that for his attack on the Pentagon, he
planned to obtain a remote controlled aircraft, fill it with
grenades, and fly the plane using a built-in GPS system.

(d)  On or about April 18, 2011, FERDAUS told the two FBI
UCEs that he now wanted to fly two remote controlled aircraft
into the Pentagon and one remote controlled aircraft into the
U.S. Capitol Building.  On this same date, FERDAUS advised the
UCEs that he needed "to do more reconnaissance" before executing
his plan.

(e)  On or about April 19, 2011, FERDAUS told the two FBI
UCEs that his attack plan was "very close" to completion; that he
knew where to get two of the three components he needed for his
plan; and all he needed to do was secure some funding.

(f)  Between in or about April 2011 and August 2011, FERDAUS
requested funding for his attack plan from the two FBI UCEs whom
FERDAUS believed to be members of, and recruiters for, al Qaeda.

(g)  On or about May 5, 2011, FERDAUS provided a digital
storage device (flash drive) to one of the UCEs, which contained
a detailed written plan for FERDAUS' attacks on the Pentagon and

6

the Capitol Building that included, among other things, technical specifications of a remote controlled airplane and grenades, photographs of his targets and launch site, maps, diagrams, and a financial estimate of cost for the attack plan.

(h)  From on or about May 13, 2011 to on or about May 15, 2011, FERDAUS traveled to the Washington, D.C. area, and conducted surveillance and photographed the targets of his planned attack (the Pentagon and the U.S. Capitol Building) and sites at the East Potomac Park located in Washington, D.C., from which he planned to launch his aerial attack vehicles.

(i)  On or about June 9, 2011, in a hotel room in Framingham, Massachusetts, FERDAUS provided a second digital storage device (flash drive) to the two FBI UCEs, which contained a detailed report of FERDAUS' Washington, D.C. trip, his expanded attack plan, and photographs he had taken in the Washington, D.C. area.  In his June 9, 2011 attack plan, FERDAUS stated that the "[o]verall goal is to shut down this target [referring to the Pentagon] by eliminating key entrances/exits and as many individuals as possible."

(j)  On or about June 9, 2011, in a hotel room in Framingham, Massachusetts, FERDAUS told the two FBI UCEs that as a result of his extensive surveillance of the Pentagon, he determined that "more stuff has to be done;" his plan needed to be expanded so as to "totally ... cut out ... everything of the

snake." FERDAUS further told the UCEs that he had decided to couple his "aerial assault" plan with a "ground directive." FERDAUS also told the two FBI UCEs that, although he initially planned to use grenades as the explosive component in his attack planes, he decided that it would be "simpler" to use homemade explosives rather than grenades.

(k)  In or about June 2011, FERDAUS identified and researched a storage facility in Framingham, Massachusetts, where he could receive, store, and design his airplane attack vehicles.

(l)  On or about June 17, 2011, FERDAUS rented storage space at a Framingham storage facility under a false name.

(m)  Between in or about June 2011 and in or about September 2011, FERDAUS requested that the two FBI UCEs supply him with explosives, grenades, fully automatic weapons, and a silencer to be used during his planned attacks on the Pentagon and U.S. Capitol Building.

(n)  On or about July 19, 2011, FERDAUS, using a false identity, "Dave Winfield," requested and obtained price quotes for remote controlled aircraft from a distributor in Florida.

(o)  In or about July 2011, FERDAUS, for the purpose of ordering and obtaining parts for his attack plan, created a PayPal account under the false identity "Dave Winfield."

(p)  On or about July 21, 2011, FERDAUS placed an order for a remote controlled aircraft under his false identity of "Dave

8

Winfield" with a Florida distributor.

(q)   On or about July 21, 2011, FERDAUS told the two FBI UCEs that he wanted to maximize the explosive impact of his attack planes and thus wanted the UCEs to get him 24 pounds of plastic explosives.

(r)   On or about August 2, 2011, FERDAUS told the two FBI UCEs that he now needed 25 pounds of plastic explosives for his attack plan and asked them to get that for him.

(s)   On or about September 28, 2011, as FERDAUS had requested and instructed, the UCEs delivered to FERDAUS explosives and firearms (material represented to FERDAUS to contain 25 pounds of C-4 explosives, including approximately 1.25 pounds of actual C-4 explosives, 3 grenades, and 6 fully automatic AK-47 assault rifles) for FERDAUS' attack plan. FERDAUS inspected the explosives and firearms in the UCEs' vehicle and inside his storage unit.  While inspecting the C-4 explosives while in his storage unit, FERDAUS placed some of these explosives inside a remote controlled aircraft that he had ordered and obtained for his attack plan.  FERDAUS then locked the explosives and firearms in his storage unit.

All in violation of Title 18, United States Code, Section 844(f).

9

**COUNT TWO:**     **18 U.S.C. §2155 (Attempting to Damage and Destroy National-Defense Premises)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1 and 2 of the Introductory Allegations and paragraphs (a) through (v) of Count One are hereby re-alleged and incorporated by reference as if fully set forth herein.

From in or about March 2011, and continuing through in or about September 2011, in the District of Massachusetts, Washington, D.C., and elsewhere in the United States,

**REZWAN FERDAUS,**
**a/k/a "Dave Winfield,"**
**a/k/a "Jon Ramos"**

defendant herein, with the intent to injure, interfere with, and obstruct the national defense of the United States, did willfully attempt to injure and destroy national-defense premises, to wit: the Pentagon.

All in violation of Title 18, United States Code, Section 2155.

10

**COUNT THREE:** **18 U.S.C. §844(d) (Receipt of Explosive Materials)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1 and 2 of the Introductory Allegations are hereby re-alleged and incorporated by reference as if fully set forth herein.

On or about September 28, 2011, in the District of Massachusetts,

**REZWAN FERDAUS,**
**a/k/a "Dave Winfield,"**
**a/k/a "Jon Ramos"**

defendant herein, did receive and attempt to receive, in interstate and foreign commerce, explosive materials, to wit: a quantity of C-4 plastic explosives and 3 grenades, with knowledge and intent that said explosive materials would be used to kill, injure, and intimidate a person, and unlawfully damage and destroy a building.

All in violation of Title 18, United States Code, Section 844(d).

**COUNT FOUR:** 26 U.S.C. §5861(d) (Receipt and Possession of Non-Registered Firearms)

The Grand Jury further charges that:

The allegations contained in paragraphs 1 and 2 of the Introductory Allegations are hereby re-alleged and incorporated by reference as if fully set forth herein.

On or about September 28, 2011, in the District of Massachusetts and elsewhere in the United States,

**REZWAN FERDAUS,**
**a/k/a "Dave Winfield,"**
**a/k/a "Jon Ramos"**

defendant herein, did knowingly receive and possess firearms, to wit: 6 fully automatic AK-47 assault rifles bearing serial numbers 2823242, 27017646, 85NC5649, ZG3809, 26007321, and one of which had its serial number removed; and three grenades, which were not registered to him in the National Firearms Registration and Transfer Record.

All in violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871.

**COUNT FIVE:**     18 U.S.C. §2339A (Attempting to Provide Material
Support to Terrorists)

The Grand Jury charges that:

The allegations contained in paragraphs 1, and 3-7 of the
Introductory Allegations are hereby re-alleged and incorporated
by reference as if fully set forth herein.

From in or about June 2011, and continuing through in or
about September 2011, in the District of Massachusetts and
elsewhere in the United States,

**REZWAN FERDAUS,**
**a/k/a "Dave Winfield,"**
**a/k/a "Jon Ramos"**

defendant herein, did knowingly and unlawfully attempt to provide
material support and resources, as that term is defined in Title
18, United States Code, Section 2339A(b)(1), to wit, modified
mobile telephones to be used as components of detonation devices,
weapons, communication equipment, training, and expert advice and
assistance, knowing and intending they were to be used in
preparation for and carrying out a violation of 18 U.S.C. §1114.

In order to provide, and attempt to provide, material
support and resources, as alleged above, defendant FERDAUS took
the following actions, among others:

(a)  Between in or about June 2011 and in or about August
2011, Defendant FERDAUS purchased five mobile phones for the
purpose of constructing detonation components for IEDs.

(b)  Between in or about June 2011 and in or about August

13

2011, Defendant FERDAUS constructed components of detonation
devices using mobile phones.

(c)  Between in or about June 2011 and in or about August
2011, Defendant FERDAUS delivered five mobile phones, each of
which FERDAUS had modified to act as an electrical switch or
trigger for an IED, to FBI UCEs, whom he believed to be members
of, and recruiters for, al Qaeda, purportedly to be used in
attacks on U.S. soldiers stationed overseas.

(d)  On or about August 1, 2011, during a meeting with the
two FBI UCEs who FERDAUS believed were al Qaeda operatives,
FERDAUS told the UCEs that he wanted to increase his production
of the mobile phone IED components.  He stated:

> I got this idea ... I think I should really up the
> phone production [and] try to do as many phones as I
> can and obviously as many as we can ship across or
> bring across.

FERDAUS suggested that he could either send the "brothers
overseas" a shipment of "just phones" and "instructions" on how
to make the detonation components or "send them" one box of "50
phones" "pre-packaged and all ready."

(e)  On or about August 1, 2011, during a meeting with the
two FBI UCEs, FERDAUS stated that he could "write instructions"
or make a video for the "brothers overseas" on how to construct
the mobile phone detonation components.  FERDAUS told the UCEs
that in these instructions he could explain to the "brothers" how
to make the detonation components using different types of

14

phones.

(f)   On or about August 1, 2011, during a meeting with the two FBI UCEs, FERDAUS advised the UCEs that he could make "20 to 30 [detonation components] per week" at his storage unit. FERDAUS stated that he wanted to build such devices because "I want to totally destroy [and] take out the enemy and kill as many kafir [non-believers] as possible.  That's why I came up with the phone idea.  Imagine if our brothers could set off 20 phones [detonators] at a time."

(g)   In or about August 2011, FERDAUS purchased 5 Tracfones for the purpose of constructing detonation components.

(h)   On or about August 24, 2011, FERDAUS delivered 2 mobile phones, each of which FERDAUS had modified to act as an electrical switch or trigger for an IED, to individuals whom he believed to be al Qaeda operatives (i.e., the UCEs) to be used in attacks on U.S. soldiers located overseas.

(i)   On or about September 20, 2011, FERDAUS made a training video containing instructions on "how to make cell phone detonators" for individuals whom he believed to be al Qaeda operatives.

(j)   On or about September 20, 2011, FERDAUS gave a mobile phone, which he had modified to act as an electrical switch to trigger for an IED, to an individual he believed to be an al Qaeda operative.

(k) On or about September 28, 2011, FERDAUS delivered 4 mobile phones, each of which FERDAUS had modified to act as an electrical switch or trigger for an IED, to individuals whom he believed to be al Qaeda operatives to be used in attacks on U.S. soldiers located overseas.

All in violation of Title 18, United States Code, Section 2339A.

**COUNT SIX:**   **18 U.S.C. §2339B (Attempting to Provide Material Support to a Designated Foreign Terrorist Organization)**

The Grand Jury charges that:

The allegations contained in paragraphs 1 and 3-7 of the Introductory Allegations are hereby re-alleged and incorporated by reference as if fully set forth herein.

From in or about June 2011, and continuing through in or about September 2011, in the District of Massachusetts and elsewhere in the United States,

**REZWAN FERDAUS,**
**a/k/a "Dave Winfield,"**
**a/k/a "Jon Ramos"**

defendant herein, did knowingly and unlawfully attempt to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b)(1), to wit, modified mobile telephones to be used as components of detonation devices, weapons, communication equipment, training, and expert advice and assistance, to a foreign terrorist organization, namely al Qaeda, in that defendant FERDAUS provided mobile phones, which FERDAUS had modified to act as electrical switches or triggers for explosives and video instructions for building "cell phone detonators," to individuals whom he believed to be affiliated with al Qaeda, purportedly to be used in attacks on U.S. soldiers stationed overseas.  Further, when FERDAUS provided said mobile phone detonation devices and instruction video, he knew that al

17

Qaeda was a designated terrorist organization, that al Qaeda had engaged and was engaging in terrorist activity (as defined in Section 212(a)(3)(B) of the Immigration and Nationality Act), and that al Qaeda had engaged and was engaged in terrorism (as defined in Section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

All in violation of Title 18, United States Code, Section 2339B.

**FIRST FORFEITURE ALLEGATION:** 18 U.S.C. § 981(a)(1)(C),
        18 U.S.C. § 981(a)(1)(G) and 28 U.S.C. § 2461(c)

The Grand Jury further charges that:

1.    Upon conviction of one or more of the offenses charged
in Counts One, Two, Five, and Six of this Indictment, the
defendant,

**REZWAN FERDAUS,**
**a/k/a "Dave Winfield,"**
**a/k/a "Jon Ramos"**

shall forfeit to the United States pursuant to Title 18, United
States Code, Section 981(a)(1)(C) and Title 28, United States
Code, Section 2461(c), any property, real or personal, that
constitutes, or is derived from, proceeds traceable to the
commission of the offenses.

2.    Upon conviction of one or more of the offenses charged
in Counts One, Two, Five, and Six of this Indictment, the
defendant,

**REZWAN FERDAUS,**
**a/k/a "Dave Winfield,"**
**a/k/a "Jon Ramos"**

shall forfeit to the United States pursuant to Title 18, United
States Code, Section 981(a)(1)(G) and Title 28, United States
Code, Section 2461(c) (i) all assets, foreign or domestic, of the
defendant; (ii) all assets, foreign or domestic, affording a
source of influence over al Qaeda; (iii) all assets, foreign or
domestic, acquired or maintained with the intent and for the

19

purpose of supporting, planning, conducting, or concealing such
violations; and (iv) all assets, foreign or domestic, derived
from, involved in, or used or intended to be used to commit such
violations.

3.    If any of the property described in paragraphs 1 and 2
hereof as being forfeitable pursuant to Title 18, United States
Code, Sections 981(a)(1)(C) and 981(a)(1)(G), and Title 28,
United States Code, Section 2461(c), as a result of any act or
omission of the defendant --

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred to, sold to, or deposited with a
        third party;

    c.    has been placed beyond the jurisdiction of this Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be
        divided without difficulty;

it is the intention of the United States, pursuant to Title 28,
United States Code, Section 2461(c), incorporating Title 21,
United States Code, Section 853(p), to seek forfeiture of all
other property of the defendant up to the value of the property
described in paragraphs 1 and 2 above.

All pursuant to Federal Rule of Criminal Procedure 32.2,
Title 18, United States Code, Sections 981(a)(1)(C) and
981(a)(1)(G), and Title 28, United States Code, Section 2461(c).

**SECOND FORFEITURE ALLEGATION**: 18 U.S.C. § 844(c) and
    26 U.S.C. § 5872(a)

The Grand Jury further charges that:

    1.   Upon conviction of one or more of the offenses charged in Counts One and Three of this Indictment, the defendant,

**REZWAN FERDAUS,**

**a/k/a "Dave Winfield,"**

**a/k/a "Jon Ramos"**

shall forfeit to the United States pursuant to Title 18, United States Code, Section 844(c) any and all explosive materials involved or used or intended to be used in such violations.

    2.   Upon conviction of the offense charged in Count Four of this Indictment, the defendant,

**REZWAN FERDAUS,**

**a/k/a "Dave Winfield,"**

**a/k/a "Jon Ramos"**

shall forfeit to the United States pursuant to Title 26, United States Code, Section 5872(a) any and all firearms involved in the offense.

    3.   If any of the property described in paragraphs 1 and 2 hereof as being forfeitable pursuant to Title 18, United States Code, Section 844(c) and  Title 26, United States Code, Section 5872(a), as a result of any act or omission of the defendant --

21

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred to, sold to, or deposited with a third party;

c.    has been placed beyond the jurisdiction of this Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in paragraphs 1 and 2 above.

All pursuant to Federal Rule of Criminal Procedure 32.2, Title 18, United States Code, Section 844(c), Title 26, United States Code, Section 5872(a), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____

FOREPERSON OF THE GRAND JURY

_____

B. STEPHANIE SIEGMANN
DONALD L. CABELL
Assistant United States Attorneys

DISTRICT OF MASSACHUSETTS, Boston, MA        September 29, 2011

Returned into the District Court by the Grand Jurors and filed.

_____  12:30 pm  9/29/11

Deputy Clerk

23